### 73147. COOK v. THE STATE.
(350 SE2d 847)

BIRDSONG, Presiding Judge.

Ronnie Cook was convicted in Whitfield County of driving under the influence, disregarding a stop sign, attempting to elude and being an habitual violator. The testimony of the state trooper who arrested Cook showed he was on patrol and was "working a wreck" at 1:08 a.m. when he saw appellant's vehicle go through a stop sign at 10-15 mph. He embarked, turned on his blue light, activated all the lights on his vehicle, turned on his siren, and pursued appellant's Ford Pinto vehicle for a distance of three-fourths of a mile or a mile, with both cars traveling 25 to 35 mph, until the Pinto turned into a driveway and parked behind a house trailer. At all times, the trooper's car was 100-150 feet (25-50 yards) behind the Pinto. The evidence as to the kind of vehicle the trooper drove was two references the trooper made that appellant exited his car and "went to the front of my patrol car," and that appellant had to be placed in the front seat of his "small patrol car" because of appellant's crutches. (He had polio.)

When the trooper exited his car and stood behind appellant's vehicle, he observed a lot of activity or commotion in the car and saw the appellant was struggling or crawling with some difficulty to get out of the passenger's side. The trooper did not remember whether the door of the driver's side ever opened. The trooper detected the strong odor of alcohol on appellant's breath, and appellant's speech was slow and his eyes were bloodshot. The trailer where appellant alighted turned out to be that of his ex-wife, and seeing a small child come out of the trailer with the apparent ex-wife, the trooper downplayed the incident for ten or fifteen minutes, then took appellant back to where the trooper had left the previous accident. An hour and twenty minutes after the arrest, an alcohol test registered intoxication of .113.

Appellant's brother Ricky Cook testified he was driving the vehicle in question, having been awakened by appellant and asked to drive him to his ex-wife's house. He did not see the flashing blue light

because it was on the dashboard of the pursuing vehicle, and did not hear the siren because he had the radio on. He indicated he quickly exited the car after he drove into the driveway and realized there was a car following behind, because he thought the pursuers were his "brother's old lady's people coming to finish the job off," they having previously "blacked [his brother's] eye and broke his finger and wallowed him in the mud"; that he hid behind a fence behind the trailer and he did not confess himself the driver after he saw it was a state trooper who arrested his brother, because "they done had him." The trooper testified that after he put appellant in his patrol car and drove off he heard over the radio a police bulletin about "somebody being behind the fence near the trailer" in the area where he had been, but he investigated this alert and decided it was the people from the wreck he had been working when he spotted appellant's vehicle run the stop sign, and that these people by walking or driving had followed him to the trailer to see what he was doing; and he did not investigate the report further.

Appellant enumerates three errors on appeal. *Held*:

1. Appellant contends he was entitled to a directed verdict of acquittal on the "attempting to elude" offense because of the State's failure to present evidence that the officer was in uniform and driving an appropriately marked vehicle.

OCGA § 40-6-395 provides: It shall be unlawful for "(a) [a]ny driver of a vehicle who willfully fails or refuses to bring his vehicle to a stop or who otherwise flees or attempts to elude a pursuing police vehicle when given a visual or an audible signal to bring the vehicle to a stop. . . . The officer giving such signal shall be in uniform prominently displaying his badge of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle."

The officer testified he was on patrol and was driving his patrol car when he signaled appellant to stop, that his blue light was flashing and the siren was activated. The appellant was not entitled to a directed verdict of acquittal on the charge, where there is no suggestion at all that the officer was not in uniform in an appropriately marked car, and the evidence reasonably indicates he was.

The object of § 40-6-395 (a) is to ensure the offense of "attempting to elude" is not found unless the evidence allows a rational jury to conclude beyond a reasonable doubt that the person fleeing could not reasonably mistake the pursuing police car for something else. If the defendant, as in this case, says he did not see or hear a pursuing car at all, then if there was a failure to expressly prove a uniform and an "appropriately marked" vehicle, it is harmless as a matter of fact. When the evidence shows that the officer was on patrol and in his patrol car and had his blue light flashing and siren sounding, the jury may rationally conclude the elements of the code section are proved

beyond a reasonable doubt. *Phillips v. State*, 162 Ga. App. 471 (291 SE2d 776) does not require a contrary conclusion.

2. As to the charge of being an habitual violator, the trial court admitted over objection the "Official Notice of Revocation" which, prior to this incident, was given to appellant informing him of his status, whereon was clearly listed two DUI convictions and one conviction for leaving the scene of an accident. In this case, the issue to be determined was whether appellant was driving the car. It cannot be said that it is highly probable this factual issue was resolved on the basis of the suggestion that appellant had driven drunk in the past. The fact that the jury perforce had to decide — who was driving the car — clearly has no logical relation to whether appellant had ever driven any car drunk, and we will not speculate or presume the jury thought it did. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869); *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

3. We find no merit in appellant's contention that records of the Department of Public Safety were improperly certified and thus improperly admitted. The records were certified by a member of the Department designated as the official custodian by the Commissioner. This clearly complies with OCGA § 40-5-2 (e) as to admissibility.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED NOVEMBER 18, 1986.

*Christopher A. Townley*, for appellant.

*Jack O. Partain III, District Attorney, Kermit T. McManus, Assistant District Attorney*, for appellee.